UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

       Plaintiff,  **No. 6:12-cv-6628(MAT)**
             **DECISION AND ORDER**
  -vs-

JK PERIS, INC., JOHN PERIS, and KATHY
PERIS,

       Defendants.

---

## BACKGROUND

Plaintiff the United States of America (the "Government") commenced the instant action on November 16, 2012, alleging that defendant JK Peris, Inc. ("JK Peris"), a New York corporation, and defendants John Peris and Kathy Peris, the vice-president and president of JK Peris, respectively, (collectively "Defendants") had failed to timely file tax returns and had failed to pay federal employment and unemployment taxes. The parties subsequently entered into a stipulation, pursuant to which this Court entered judgment against JK Peris and in favor of the Government in the amount of $291,503.37, as well as a permanent injunction order requiring, among other things, that: (1) "Defendants . . . remit the sum of $1,000 per month commencing February 15, 2013, via pay.gov," with such payments to "be applied to the outstanding judgment"; (2) "Defendants . . . deposit withheld FICA and income taxes, as well as the share of FICA and FUTA taxed for defendant JK Peris, Inc. in an appropriate federal depository bank in accordance with federal deposit regulations"; and (3) "Defendants . . . sign and

deliver affidavits to [Internal Revenue Service] Revenue Officer Ronald P. Weaver . . . on the first date of each month stating that the requisite withheld income, FICA and FUTA tax deposits were timely made." Docket No. 17 at 1-3 (hereinafter the "Injunction Order").

On December 27, 2013, the Government moved for sanctions and to hold Defendants in civil contempt. Docket No. 18. The Government submitted evidence to the Court showing that Defendants had failed to comply with the terms of the Court's order by failing to deposit withheld FICA and income taxes for October 2013, failing to make the required payroll tax deposits required for the quarter ended September 30, 2013, and failing to remit the monthly payments of $1,000 for the months of October and November 2013. *Id*. at 1. The Government asked the Court to find Defendants in civil contempt and, as a sanction, to incarcerate either Mr. Peris or Mrs. Peris in order to coerce compliance. *Id*. Defendants opposed the Government's motion, explaining that the missed payments were due to insufficient funds and submitting evidence to show that two payments had been made on January 8, 2014 to cover the withholding taxes owed. Docket No. 19. On June 12, 2014, the Court entered a Decision and Order in which it noted that it appeared Defendants had made the delinquent payments on which the motion for contempt was based. Docket No. 25. The Court therefore denied the Government's motion, but stated that it could "renew its motion for

contempt should it become aware that defendants have failed to comply with this Court's . . . Injunction Order." *Id*. at 2.

On December 6, 2017, the Government filed a motion requesting that the Court issue an order to show cause why Defendants should not be held in contempt of court. Docket No. 26. In support of its motion, the Government submitted evidence demonstrating that Defendants had failed to make at least 47 required monthly payments and had failed to submit the required affidavits to Revenue Officer Weaver on at least 24 occasions, in direct violation of this Court's Injunction Order. *Id*.

The Court granted Defendants two different extensions of time to respond to the Government's motion for an order to show cause (*see* Docket Nos. 28 and 31), but Defendants nonetheless failed to file any opposition to the Government's motion, or to submit any evidence to contradict the Government's claim that they had failed to comply with this Court's Injunction Order. Accordingly, on May 1, 2018, the Court granted the Government's motion and issued an Order to Show Cause. Docket No. 34 (the "Order to Show Cause").

The Order to Show Cause required Defendants to "to show cause in writing on or before June 15, 2018, why they should not be found in contempt of this Court's permanent injunction order." *Id*. at 2. Defendants were advised that failure to respond to the Order to Show Cause could result in the imposition of sanctions against them, including but not limited to the appointment of a receiver to

marshal JK Peris' assets for the benefits of its creditors and/or an award of compensatory damages to the Government. *Id*. at 3.

Defendants filed a response to the Order to Show Cause on June 14, 2018. Docket No. 38. Defendants indicated that they had incorrectly believed that attorneys who were assisting them with other matters were also going to respond to the Court's Order to Show Cause. *Id*. at 1. Defendants further represented that JK Peris had undergone "difficult financial times over the years," causing them to "miss some payments." *Id*. Defendants claimed that they had "caught up and paid the missed payments from 2016 and have remained current since." *Id*. However, Defendants did not file any documents or other corroborating evidence to support this contention. Defendants further represented that Mr. and Mrs. Peris are in financial distress, but that JK Peris's financial outlook is improving, and asked the Court to deny the Government's request that they be found in contempt and permit them additional time to repay their debts. *Id*. at 1-2.

On June 22, 2018, the Government filed a reply in further support of its request that Defendants be found in contempt. Docket No. 39. The Government submitted evidence contradicting Defendants' claim that they had "caught up" on their missed payments, demonstrating that the last Court-ordered payment made by Defendants was in April 2015 and that there was a balance due on Defendant' quarterly tax obligations from the fourth quarter of 2015 through the second quarter of 2017. Docket 39-1 at ¶¶ 10-12.

Accordingly, the Government reiterated its request that the Court find Defendants in contempt.

## **DISCUSSION**

### I. Standard for Civil Contempt

Civil contempt encompasses "[a] sanction imposed to compel obedience to a lawful court order or to provide compensation to a complaining party." *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989); *see also Vuitton et Fils S. A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979)("Generally, the sanctions imposed after a finding of civil contempt serve two functions: to coerce future compliance and to remedy past noncompliance."). "Federal courts maintain the inherent power to enforce their orders by civil contempt." *Drew-King v. Deep Distributors of Greater NY, Inc.*, 274 F. Supp. 3d 132, 136 (E.D.N.Y. 2017) (internal quotation omitted). The Court may hold a party in civil contempt for failure to comply with an order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)(internal quotation omitted). A violation need not be willful in order to warrant civil contempt. *Id*.

### II. Defendants are in Civil Contempt of the Injunction Order

The Court finds that the requirements for holding Defendants in civil contempt are met in this case. Defendants have failed to comply with the terms of the Injunction Order, which is clear and unambiguous. Defendants have not disputed that the Injunction Order clearly and unambiguously required them to make monthly payments towards the outstanding judgment and to comply with their tax obligations going forward.

The proof of Defendants' noncompliance is clear and convincing, consisting of records maintained by the Government and sworn declarations by Revenue Officer Weaver, who has personal knowledge of the information he has provided to the Court. Moreover, Defendants do not dispute that they have missed payments that were required by the Court's Injunction Order. *See* Docket No. 38 at 1. "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal quotation omitted). This standard has been amply met in this case.

The Court further finds that Defendants have not attempted to comply with the Court's order that it make monthly payments of $1000 with reasonable diligence, despite their claims that they failed to make the payments due to financial inability. Because "[a] civil contempt order is designed to be coercive rather than punitive[,] . . . "a party's complete inability, due to poverty or

-6-

insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). However, "[t]he alleged contemnor bears the burden of producing evidence of his inability to comply," and he is required to "establish his inability clearly, plainly, and unmistakably." *Id*. Moreover, "[w]hen an order requires a party to pay a sum certain, a mere showing that the party was unable to pay the entire amount by the date specified is insufficient to avoid a finding of contempt. When a party is absolutely unable to comply due to poverty or insolvency, inability to comply is a complete defense. <u>Otherwise, the party must pay what he or she can</u>." *S.E.C. v. Musella*, 818 F. Supp. 600, 602 (S.D.N.Y. 1993) (internal citations omitted and emphasis added).

In this case, the proof submitted by Defendants regarding their alleged inability to make the payments required by the Injunction Order consists of unsworn statements to the effect that: (1) for the last several years, Mr. Peris's salary from JK Peris has been under $16,000; (2) Mrs. Peris has not received a check from JK Peris in over 10 years; (3) Mr. and Mrs. Peris have two vehicles, one of which is 14 years old and the other of which is 23 years old; and (4) Mr. and Mrs. Peris have no cash on hand or in the bank. Docket 38 at 2. These statements are insufficient to establish, "clearly, plainly, and unmistakably," that Defendants were unable to make payments of any amount towards the outstanding

judgment. Defendants have not provided the Court with any information regarding JK Peris's revenue during the time period at issue, nor have they provided the Court with comprehensive information regarding Mr. and Mrs. Peris's expenses, income, and assets. The Court cannot conclude from the information provided by Defendants that they were wholly unable to make even partial payments over the course of multiple years, or to otherwise at least attempt to comply with the terms of the Injunction Order. *See S.E.C. v. Universal Exp., Inc.*, 546 F. Supp. 2d 132, 140 (S.D.N.Y. 2008) ("generalized assertions of poverty" are insufficient to demonstrate an inability to pay).

Revenue Officer Weaver's sworn statements confirm that Defendants did not act with reasonable diligence in this case. Revenue Officer Weaver reports that "[o]n many occasions," he visited the business offices of JK Peris in an attempt to secure compliance with the Injunction Order. Docket No. 27 at ¶ 11. However, Defendants refused to answer the door or to discuss the matter with Revenue Officer Weaver. *Id*. at ¶ 12. These are not the actions of parties diligently attempting to meet their obligations. Revenue Officer Weaver further reports that on seven occasions, Defendants submitted signed affidavits that falsely represented payroll tax deposits had been made when they in fact had not been. *Id*. at ¶ 10. Defendants' submission of false affidavits (particularly coupled with the fact that they falsely claimed in their response to the Court's Order to Show Cause to be

"caught up" on their missed payments) is inconsistent with their claim that they were sincerely attempting to comply with the terms of the Injunction Order.

The Court further notes that Defendants were put on notice by the Government's filings in this matter that they were required to "pay as much as is possible to pay under the circumstances." Docket No. 27 at 6 (internal quotation and alterations omitted); *see also* Docket No. 29 at 3 ("The law is clear: Defendants were required to pay as much as is possible to pay under the circumstances.") (internal quotation and alterations omitted). Nonetheless, Defendants have failed to make even a *de minimis* payment towards their outstanding debt during the pendency of the Government's motion and the Order to Show Cause, further confirming that they have not been diligent in attempting to comply with the Court's Injunction Order.

Defendants have not satisfied their burden of demonstrating a complete inability to make even partial payments towards their past liability, nor have they otherwise shown reasonable diligence in attempting to comply with the Court's Injunction Order. The standard for a finding of civil contempt is therefore met in this case.

**III. Appropriate Sanctions**

Having found that Defendants are in civil contempt due to their failure to comply with the Injunction Order, the Court must next consider the appropriate sanction. As set forth above, civil

contempt sanctions may permissibly serve two purposes: to compel obedience with the Court's orders in the future or to provide compensation to an injured party. *Terry*, 886 F.2d at 1351. "So far as the first of these functions is concerned, the district judge, sitting in equity, is vested with wide discretion in fashioning a remedy." *Vuitton et Fils*, 592 F.2d at 130. On the other hand, "once the plaintiff has proved that he has suffered harm because of a violation of the terms of an injunction, compensatory damages are appropriate," and as such, "[t]he district court is not free to exercise its discretion and withhold an order in civil contempt awarding damages, to the extent they are established." *Id*.

In this case, the Government seeks both a coercive sanction and a compensatory sanction. First, the Government asks the Court to order that, unless Defendants make the outstanding payments, a receiver be appointed to administer JK Peris's assets. Second, the Government asks the Court to award a compensatory sanction of $47,000, the amount of the monthly payments that Defendants have failed to make. The Court considers each of these requests below.

### A. Coercive Sanction

The Court agrees with the Government that appointment of a receiver as a coercive sanction is warranted in this case if Defendants do not promptly purge their contempt. *United States v. Latney's Funeral Home, Inc.*, 41 F.Supp.3d 24 (D.D.C. 2014) is instructive in this regard. There, as in this case, the defendants were a family-owned business and its co-operators who had failed to

satisfy their federal tax obligations. *Id*. at 27. The Government brought an action against them, and an injunction was entered that required the defendants to comply with the provisions of the Internal Revenue Code. *Id*. The defendants failed to comply with the court's injunction, and the Government requested that they be held in civil contempt. *Id*. The court granted the Government's request and appointed a limited receiver to ensure the defendants' compliance with the court's order going forward. *Id*. at 36-38.

The Court agrees with the reasoning set forth in the *Latney's Funeral Home* case with respect to its authority to appoint a receiver as a coercive sanction. As the court in that matter explained, "[f]ederal courts have broad equitable powers to craft remedial sanctions for civil contempt," including "the ability to appoint a receiver to enforce compliance with the law." *Id*. at 36. The Court's power to appoint a receiver is also codified by the Internal Revenue Code, which provides in relevant part that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue . . . orders appointing receivers . . . as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

Further authority for the Court's ability to appoint a receiver in this matter is found in Federal Rule of Civil Procedure 69(a) and New York Civil Practice Law and Rules ("CPLR") § 5228. Pursuant to Rule 69(a), enforcement of a money judgment (such as

that obtained by the Government in this matter) is governed by the procedure of the state where the court is located - in this case, New York. CPLR § 5228 in turn provides that "[u]pon motion of a judgment creditor, . . . the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment." N.Y. C.P.L.R. § 5228(a). Based on the foregoing authority, the appointment of a receiver to administer JK Peris's property is within the Court's powers.

The Court further finds that the Government has demonstrated appointment of a receiver is warranted in this matter. Like in *Latney's Funeral Home*, "Defendants have demonstrated a pattern and practice of noncompliance with the internal revenue laws." 41 F.Supp.3d at 37. As Revenue Officer Weaver's sworn statements set forth in detail, Defendants have not only failed to make in excess of 40 monthly payments towards their prior tax liability, they have also failed to comply with their ongoing quarterly tax filing obligations, such that there is an outstanding balance on each period from the fourth quarter of 2015 through the second quarter of 2017. Docket 39-1 at ¶¶ 8-12. Appointment of a receiver is thus an appropriate "remedial mechanism through which [the Government] will recover Defendants' years of unpaid taxes and guarantee compliance with the Injunction moving forward." *Latney's Funeral Home*, 41 F.Supp.3d at 38.

"The Court appreciates that appointing a receiver is an extraordinary remedy, but this is an extraordinary situation." *Id*. (internal quotations and alterations omitted). Despite being under Court order to comply with their ongoing tax obligations and to make payments towards their outstanding tax liability, Defendants have failed to do so for multiple years. Moreover, based on the record and Defendants' conduct in this matter, "the Court is not persuaded that Defendants can remedy their historic noncompliance or repay their substantial outstanding tax judgment without close supervision and support." *Id*. Under these circumstances, appointment of a receiver is warranted.

For all the foregoing reasons, the Court finds that, if Defendants fail to promptly cure their contempt of the Injunction Order, appointment of a receiver is warranted. As set forth in further detail below, should Defendants fail to purge their contempt in the time alloted by the Court, the Government, as it has requested, shall submit to the Court "a proposed receivership order identifying a receiver and recommending the terms of the receivership, including but not limited to a proposal for limited funding of the receiver's costs and fees by the Government." Docket No. 27 at 9.

### B. Compensatory Sanction

The Government also contends that it is entitled to $47,000 (the amount of Defendants' missed monthly payments) as a compensatory sanction. The Court disagrees. As the Government

acknowledges, the purpose of a compensatory sanction is to "'make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed.'" Docket No. 27 at 10 (quoting *Vuitton et Fils*, 592 F.2d at 130). Importantly, a compensatory sanction cannot be punitive. *See Terry*, 886 F.2d at 1351 (a sanction "imposed to punish for an offense against the public and to vindicate the authority of the Court" amounts to criminal contempt).

Here, the Government already has a judgment against Defendants for $291,503.37, which includes the $47,000 that Defendants failed to pay. The Government remains free to collect this judgment in the manner customarily available to a judgment creditor. Were the Court to impose an additional sanction of $47,000 on Defendants, it would amount to a potential double recovery for the Government, rather than restoring the Government to the position it would have been in had Defendants complied with the Injunction Order.

The Government has failed to set forth any other compensatory damages to which it might be entitled - for example, "the reasonable costs of prosecuting the contempt." *Vuitton et Fils*, 592 F.2d at 131. In a civil contempt proceeding, "the party seeking compensation carries the burden of proof as to those damages." *Cordius Tr. v. Kummerfeld Assocs., Inc.*, 658 F. Supp. 2d 512, 524 (S.D.N.Y. 2009). Accordingly, because the Government has not shown that it is entitled to the $47,000 sanction it seeks, and because the Government has not provided proof of any other compensatory

damages to which it might otherwise be entitled, the Court declines to impose a compensatory sanction at this time.

## **CONCLUSION**

For the reasons discussed above, the Court holds Defendants in civil contempt. Defendants shall be given an opportunity to purge themselves of their contempt, as described more fully below. If Defendants fail to purge themselves of their contempt, the Court shall issue a further order appointing a receiver to enforce Defendants' compliance with the Injunction Order and the Internal Revenue Code.

## **ORDER**

For all the foregoing reasons, it is hereby

**ORDERED** that Defendants are found in civil contempt of the Court's Injunction Order; and it is further

**ORDERED** that on or before August 31, 2018, the Government shall file with the Court and serve on Defendants a sworn declaration from Revenue Officer Weaver setting forth the exact amount due and owing by Defendants to the Government under the terms of the Injunction Order as of the date of this Decision and Order. Revenue Officer Weaver's sworn declaration shall explain how this amount was calculated and shall, to the extent possible, include supporting documentation; and it is further

**ORDERED** that Defendants shall have until September 28, 2018, to purge themselves of their civil contempt by remitting to the

Government the amount set forth in Revenue Officer Weaver's sworn declaration; and it is further

**ORDERED** that if Defendants fail to purge themselves of their civil contempt as set forth above, the Government shall file with the Court and serve on Defendants, on or before October 12, 2018, a proposed receivership order identifying a receiver and recommending the terms of the receivership.

**ALL OF THE ABOVE IS SO ORDERED.**

                                                  **s/Michael A. Telesca**

                                          HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    August 16, 2018
            Rochester, New York.